UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

RAMON E. DEVINE,                    )
                                    )
        Plaintiff,                  )
                                    )
    vs.                             )        Case No. 4:12CV1599 CDP
                                    )
CAROLYN W. COLVIN,[1]               )
Commissioner of Social Security,    )
                                    )
        Defendant.                  )

## MEMORANDUM AND ORDER

This is an action for judicial review of the Commissioner's decision denying

Ramone Devine's application for disability insurance benefits under Title II of the

Act, 42 U.S.C. §§ 401 et seq. Section 205(g) of the Act, 42 U.S.C. §§ 405(g),

provides for judicial review of a final decision of the Commissioner. Devine

claims he is disabled because of chronic back and neck pain. Because I find that

the decision denying benefits was supported by substantial evidence, I will affirm

the decision of the Commissioner.

## Procedural History

Devine filed his application for benefits on March 26, 2010. He alleges

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. As such, she should be substituted for Michael J. Astrue as the defendant in this suit. Fed. R. Civ. P. 25(d).

disability beginning December 1, 2009.[2]  Devine's insured status under Title II of

the Act expired on December 31, 2009.  On June 6, 2011, following a hearing, an

ALJ issued a decision that Devine was not disabled.  The Appeals Council of the

Social Security Administration (SSA) denied his request for review on July 23,

2012.  Therefore, the decision of the ALJ stands as the final decision of the

Commissioner.

## Evidence Before the Administrative Law Judge

### Application for Benefits

Devine completed an Adult Function Report in conjunction with his

application for benefits on April 20, 2010.  In it, he described his daily activities as

eating breakfast, watching the news, letting the dog out, exercising, watching

television, talking to friends and family, cleaning up, performing household

chores, going to the grocery store, eating dinner, watching television or a movie,

and then going to bed.  He lets the dog in and out of the house.  Devine stated that

he can no longer lift heavy weights, climb ladders, use tools, jog, exercise, or play

sports because of his condition.  His chronic back pain affects his sleep.  He can

care for himself but has some difficulty tying his left shoe.  He prepares his own

---

[2]Devine amended his onset date to December 1, 2009 at the hearing before the ALJ.  (Tr. 28).

meals of sandwiches or frozen pizzas, but his wife cooks most of the meals. His wife does the cleaning and the laundry. Devine pays someone to perform yard work. He can walk, drive, and ride in a car, and he goes out alone. Devine shops for groceries and miscellaneous items in stores and by computer. He pays his bills and handles money and bank accounts. Devine watches television and reads, spends time with others, and attends church. He does not like staying out late because his neck and back get sore. Devine claims his condition affects his ability to lift, squat, bend, stand, reach, sit, kneel, and climb stairs a little. He can walk a half-mile to a mile before needing to rest and has no problem paying attention. He follows instructions and gets along with others. Devine stated he was claustrophobic because he "did not do well in the MRI machine."

## Medical Records[2]

Devine was seen by Stephen E. Vierling, M.D., on April 23, 2003 for left

---

[2]Here, Devine must prove he was disabled before his last insured date of December 31, 2009. "When an individual is no longer insured for Title II disability purposes, we will only consider her medical condition as of the date she was last insured." Davidson v. Astrue, 501 F.3d 987, 989 (8th Cir. 2007) (internal quotation marks and citation omitted) (alteration omitted). In this case, the relevant time period for consideration is very short – from the alleged onset date of December 1, 2009 to the last insured date of December 31, 2009. The record here includes medical evidence subsequent to Devine's last insured date. The Eighth Circuit Court of Appeals has recognized that it "has reached different conclusions about whether medical evidence concerning a claimant's condition at a later time is probative of her condition during the period of insured status." Id. at 990 (comparing Rehder v. Apfel, 205 F.3d 1056, 1061 (8th Cir. 2000) with Basinger v. Heckler, 725 F.2d 1166, 1169 (8th Cir. 1984)). As this evidence is part of the administrative record, I will summarize here.

lower extremity pain.  Dr. Vierling's treatment notes indicate that Devine was previously treated for low back syndrome and underwent a microdiscectomy in December of 2001 with significant improvement thereafter.  Although Devine returned to vigorous physical activity, he began experiencing recurrent pain in the left lower extremity, occasional groin pain, and some posterior pain.  Devine stated that the pain is fairly constant, and that he decreased his physical activity as a result.  Upon examination, Dr. Vierling noted no lumbosacral tenderness on palpation, with no sacroiliac or sciatic notch pain.  Devine had good forward flexion, with some limitation and hyperextension of the back, and good rotation and side bending.  Straight leg test was negative for neurogenic signs.  Devine had limitation in his range of motion of the left hip compared to the right, with some pain, forward flexion to just 90 degrees, and some limitation in internal rotation.  Devine had weakness on resistive testing of the left hip, but his distal pulses were good and his sensory function was intact.  Dr. Vierling reviewed a radiology report of the left hip which showed irregularity of the femoral head, degenerative spur formation, and a narrowing of the hip joint, with findings significantly more pronounced on the left side than the right.  Dr. Vierling diagnosed Devine with left hip arthritis, moderately progressive, right hip arthritis, mild, and lumbosacral syndrome, lumbosacral arthrosis - stable.  He prescribed ibuprofen and limited

activity, with a possible hip replacement in the future.

An MRI of Devine's lumbar spine on January 6, 2006 revealed post operative changes at L4 with enhancing perineural fibrosis without recurring disc herniation and degenerative disc at L5 with an annular tear or fissure in the right paracentral region. Devine's L3 disc was concave, and his L5 disc was narrowed with bulging beyond the endplate margins.

On January 11, 2006, Devine saw Paul Young, M.D., at the Microsurgery and Brain Research Institute for right-sided lumbar and leg pain. Devine reported that the pain began suddenly about two weeks before, with no precipitating event, and radiated into his buttock, calf, and shin. Upon examination, Dr. Young found no erythema, ecchymosis or edema in his head, neck, or shoulder girdle. He observed no tenderness, crepitation, or deformity, and Devine had a full, painless range of motion of his neck. Dr. Young noted that Devine's back surgery scars were well-healed, and he observed no tenderness in the lumbar area. Devine had a full, painless range of motion of the thoracic and lumbar spine, with normal strength, stability, and tone. Both lower extremeties were normal upon examination, with full muscle strength and tone. Dr. Young observed an antalgic gait favoring the right, but otherwise Devine's station and posture were normal. Testing of tendon reflexes was normal, as was the straight leg raising test. Dr.

Young reviewed Devine's recent MRI and concluded it showed post-operative changes at left L5, but no new herniated nucleus, with some recess syndrome at L3-4 and L4-5. Dr. Young prescribed epidural steroid injections and physical therapy and noted that Devine could possibly benefit from an L3-4 and L4-5 decompression if there was no improvement.

That same day, Devine visited Steven Granberg, M.D., of Pain Management Services for a transforaminal epidural steroid injection. Devine told Dr. Granberg that he felt good after his 2000 microdiscectomy until he developed right lower extremity radicular symptoms after lifting some furniture. The pain got worse while sitting or laying down and better while standing or walking. Upon examination, Dr. Granberg noted that Devine's gait was slightly antalgic. Examination of muscle groups yielded normal results. Devine had a full range of motion in all extremeties, no pain in rotation of the back and spine, and no tenderness or trigger points. Straight leg raising test was positive on the right at 30 degrees. Dr. Granberg administered a right L4 and L5 transforaminal lumbar selective nerve root steroid injection, which was well tolerated by Devine.

Devine saw Dr. Young again on December 16, 2009 for cervical and lumbar spine symptoms. Devine reported that the pain in his cervical spine began years ago and that the onset was spontaneous and gradual. He stated that the symptoms

had worsened and described an achy, deep pain of moderate to marked severity in his upper neck. Devine also reported having paraspinal spasms, stiffness, and a decreased range of motion in his neck. Devine also told Dr. Young he had an achy, deep pain of moderate severity in his right lower lumbar region, which radiated into his left hip and produced spasms, stiffness, and decreased range of motion. Upon examination, Dr. Young found no erythema, ecchymosis or edema in the head, neck, or shoulder girdle. Devine had a full, painless range of motion in his neck, as well as his thoracic and lumbar spine. There was no tenderness of the spine, ribs, or joints, and no kyphosis, lordosis, or scoliosis of the spine. Examination of the upper and right lower extremities yielded normal results, but Dr. Young found limited mobility with pain in the left lower extremity. The left lower extremity was otherwise normal, as were Devine's reflexes. Testing was positive for vertebral artery tension bilaterally and negative for straight leg raising. Dr. Young ordered additional imaging and told Devine he would review the results and contact him with a treatment plan.

The next day, Devine obtained an MRI of his lumbar spine which revealed mild central spinal stenosis at L3-4 and L4-5. The test showed degenerative disc changes at all levels with varying degrees of intervertebral disc space narrowing, loss of T2 signal intensity, and endplate spurring. Disc bulging was found at L3-4

and L4-5, with intervertebral disc space narrowing most pronounced at the L5-S1 level. Mild left neural forminal encroachment secondary to disc bulging and facet arthopathy at L5-S1 was also observed.

Devine also obtained an MRI of his cervical spine on the same day. That test showed mild multilevel degenerative disc disease. Disc bulging was found at C2-3 and evident at C4-5. Bilateral uncovertebral joint arthropathy was also present at C4-5.

Dr. Young reviewed Devine's MRI results on December 17, 2009, and noted moderate degenerative changes at L3-4 and L4-5, moderate lumbar stenosis at L3-4 and L4-5, and moderate degenerative changes in the cervical spine.

Devine had a follow-up visit to discuss his MRI results with Dr. Young on December 28, 2009. Devine complained that his symptoms were worsening, with achy, deep pain of moderate to marked severity in his upper neck. He also stated that the pain radiated into his head and both shoulders. Devine also reported right cervical paraspinal spasms, stiffness, and a decreased range of motion in his neck. Devine also noted achy, deep pain of moderate severity in his right lower lumbar region, which radiated into his left hip and caused spasms, stiffness, and a limited range of motion in his lumbar spine. Dr. Young reviewed the MRI results with Devine, which revealed moderate degenerative disc disease of the cervical spine,

with no stenosis or nerve compression, and moderate multi-level degenerative disc disease of the lumbar spine, with mild stenosis at L3-4 and moderate stenosis at L4-5.  Dr. Young prescribed a home exercise program and anti-inflammatories.

Elbert Cason, M.D., performed a consultative examination of Devine in connection with his application for benefits on June 28, 2010.  According to Dr. Cason, Dr. Young told Devine he needed back surgery, but Devine did not want it. Devine told Dr. Cason he could walk three blocks, stand for 20 minutes, and go up one flight of stairs.  Devine stated that he could squat with pain and bend over. When asked to describe his daily activities, Devine said that he lived with his wife and performed no household chores.  He drives and gets out of the house 4-5 times per week.  Upon examination, Dr. Cason found Devine to be in the upper limits of normal weight for his height.  Dr. Cason noted some pain in Devine's neck and decreased motion in his cervical spine,[3] but observed no venous distention, thyromegaly, or lymphadenopathy.  Devine had a normal range of motion in his back without muscle spasms.  Straight leg raising test was negative.  Devine's cervical spine motions were decreased, and he had tenderness in the posterior cervical paravertebral area without spasms.  Devine had no clubbing, cyanosis, or

---

[3]Cervical spine lateral flexion was limited to 30 degrees bilaterally out of 45 degrees. Flexion was limited to 40 out of 50 degrees, and extension was limited to 60 out of 80 degrees. Rotation was limited bilaterally to 40 out of 80 degrees.

edema in his extremities, and he could heel and toe stand and squat.  Dr. Cason

observed that Devine walked with a decided limp on the left leg.  Devine stated

his left hip hurt.  Devine had a decreased range of motion on the left hip, with

tenderness over the lateral aspect.[4]  All major muscle group strengths were normal,

and his grip strength was also normal.  The remainder of his musculoskeletal

examination was unremarkable, as was his neurological examination.  Dr. Cason's

clinical impression was cervical spine degenerative disc disease, lumbar spine

degenerative disc disease, and left hip pain.

Carla Battle, a non-medical consultant, performed a physical residual

functional capacity assessment of Devine in connection with his application for

benefits on July 7, 2010.  Battle concluded that Devine could occasionally lift

and/or carry 20 pounds, frequently carry and/or lift 10 pounds, stand and/or walk

with normal breaks for about six hours in an eight-hour workday, sit with normal

breaks for about six hours in an eight-hour workday, and was otherwise unlimited

in pushing and pulling.  She found that Devine could frequently climb ramps/

stairs and stoop, and only occasionally balance, kneel, crouch, and crawl.  Battle

believed that Devine should avoid concentrated exposure to extreme cold,

---

[4]Hip forward flexion on the left was limited to 70 out of 100 degrees.  Backward
extension on the left hip was limited to 20 out of 40 degrees.  Abduction was limited to 10 out of
20 degrees.

wetness, and hazards, but was otherwise unlimited in his exposure to extreme heat, humidity, noise, vibration, fumes, and odors.

Devine was treated by Patricia Hurford, M.D., for back pain on October 26, 2010. Devine stated that he was experiencing more significant symptoms in the lumbar spine with difficulty going from a sitting to standing position. Devine reported that it took him two minutes before he could get "upright and totally normal." He stated that his pain rating while at rest was zero, but with activity or standing it was a seven. Devine complained of muscle spasms in his low back with numbness into the left lower extremity and reported aggravating factors included sitting, standing, walking, twisting and bending. Relieving factors included sitting. Devine told Dr. Hurford that he could drive, walk, climb stairs, do some housework, sit, do some work at his job, do some standing, and get dressed. He denied any sleep disturbance. Devine admitted he was currently working as a real estate broker. Upon examination, Dr. Hurford noticed decreased lumbar lordosis and a well healed surgical scar in the lower lumbar region, which no increased pain with facet loading. Devine had normal tone and strength in his lower extremities with pain and moderate restriction with internal rotation on the left side, mild restriction with external rotation on the left side, and no restrictions on the right. Dr. Hurford observed diminished pin prick sensation at L4 and L5

dermatones on the left side of Devine's back. Straight leg raising test was negative. Devine's reflexes and gait were normal. After examination and review of Devine's previous MRI and X-ray test results, Dr. Hurford's assessment was cervical lumbar degenerative disc disease and spondylosis. She recommended a short course of oral steroids and a muscle relaxer for use at bedtime, along with a trial period of aquatic physical therapy. Dr. Hurford prescribed Prednisone and Flexeril and recommended possible episode injections at L5-6 if Devine's symptoms did not improve.

Devine saw Dr. Hurford again on November 16, 2010 for a follow-up visit. Devine reported shooting, severe, brief pain in the right paracervical region of his back with prolonged computer use, as well as persistent poor sleep. He did not go to aquatic physical therapy, but was looking to better manage his pain. Upon examination, Devine's lumbar spine alignment and gait were normal. Straight leg raising test was negative. Devine had pain in the lateral masses at L4-L5 and L5-S1 with increased pain on extension of facet loading. Dr. Hurford's impression was lumbar degenerative disc disease with spondylosis, left neuroforaminal narrowing at L5-S1, mild central stenosis at L3-L4 and L4-L5, cervical spondylosis and degenerative disc disease with mild disc bulging at C2-C3 and C4-C5, right paracervical intermittent symptoms, left lower extremity sensory

disturbance, and left sided low back pain with increased pain on extension.  Dr. Hurford discussed facet injections combined with a nerve root block as a treatment option, but Devine preferred a less invasive approach so Dr. Hurford prescribed steroids, Restoril for sleep disruption, Tramadol, and physical therapy.

On December 15, 2010, Devine saw Dr. Hurford for a follow-up visit.  He reported doing much better, although he still had symptoms with prolonged computer use.  Devine reported sleeping much better and exercising.  He rated his pain a two on a scale from zero to ten.  Dr. Hurford renewed Devine's prescription for Restoril, counseled him on exercise issues and computer use, and recommended a reevaluation in six months.

On February 4, 2011, Devine called Dr. Hurford's office complaining of back spasms.  She called in a prescription for Medrol and advised him to make a follow-up appointment.

Devine did not see Dr. Hurford again until April 12, 2011.  He rated his pain as a three on a ten-point scale.  Devine reported two episodes of severe back spasms and chronic sleep disruption.  He used Ibuprofen, heat, stretching, and aerobic exercises for pain control.  He tried yoga and other activities but they increased his pain.  Dr. Hurford reported that "[r]egular dosing of any medication is not done, although he does use Ibuprofen and a muscle relaxer" as needed.

Devine reported that the Medrol helped relieve his spasms, but that he was not currently working due to back problems. Examination of the shoulders, thoracolumbar spine, buttocks, hips yielded normal results. Devine's gait, stance, reflexes, and balance were normal, as were muscle bulk, tone, and strength. Devine's sternocleidomastoid muscle on his cervical spine was tender on the right side, as were the trapezius muscle and occipital protuberance. Cervical spine motion was abnormal and showed pain elicited by right-sided motion. The lumbosacral spine appeared normal, but palpation of the lumbosacral spine revealed tenderness. Lumbosacral spine flexion was abnormal, as was extension. Pain was caused by flexion. Straight leg raising test was negative. Dr. Hurford's assessment was cervical spondylosis without myelopathy, lumbar degenerative disc disease, lumbar spondylosis without myelopathy, myofascial pain, and spinal stenosis of the lumbar region without neurogenic claudication. She prescribed Valium and Restoril, and discussed the use of stretching, exercises, heat and cold application, and the use of medications for pain relief.

Devine next saw Dr. Hurford on June 28, 2011. He reported increasing back symptoms and being limited in medication use due to comorbid conditions. Devine rated his pain as a three on a ten-point scale, but he claimed it was sometimes a nine or ten, which left him unable to get out of bed. Devine also

complained of some neck symptoms. Upon examination, Dr. Hurford found a full range of motion in his cervical spine and normal strength in his upper extremities. Dr. Hurford observed a marked restriction in Devine's range of motion in his lower extremities, with paravertebral tenderness and a positive Spring test in the lower lumbar region. Devine had no pain with internal or external rotation of the hips, and his sensation and gait were normal. Reflexes were trace but symmetric at the patella and ankle. Dr. Hurford's assessment was cervical spondylosis and degenerative disc changes with intermittent cervical symptoms, lumbosacral syndrome secondary to spondylosis, degenerative disc disease, and spinal stenosis at L3-4 and L4-5, and comorbid conditions of GERD and depression. Dr. Hurford discontinued Devine's medications because of his comorbid conditions and recommended facet injections, possible epidural injection, and physical therapy.

After the ALJ rendered her decision, Dr. Hurford completed a physical residual functional capacity questionnaire in connection with Devine's application for benefits on July 8, 2011.[5] Dr. Hurford indicated that she began treating Devine on October 26, 2010, and saw him monthly. She diagnosed Devine with cervical and lumbar degenerative disc disease and spondylosis. She stated his prognosis

---

[5]Because this evidence was submitted to and considered the Appeals Council, I consider it here in determining whether the ALJ's decision was supported by substantial evidence. Frankl v. Shalala, 47 F.3d 935, 939 (8th Cir. 1995).

was fair to poor.  Dr. Hurford described Devine's symptoms as pain in his neck, lower back, and left leg, with spasms, weakness, and fatigue.  When asked for clinical findings and objective signs of Devine's pain, Dr. Hurford indicated that Devine rated the severity of his pain a three on a ten-point scale, with increasing severity caused by spasms.  Dr. Hurford indicated that Devine's use of medications was limited due to comorbid conditions, and she believed depression and anxiety contributed to his physical condition.  Dr. Hurford indicated that Devine would frequently experience pain or other symptoms severe enough to interfere with work tasks.  She believed he was capable of low stress jobs, that he could walk six to ten city blocks, not continuously, and that he could sit one to two hours before needing to walk.  For the remainder of the questions regarding Devine's abilities, including work restrictions and limitations, Dr. Hurford simply wrote, "See Notes."

Testimony

At the time of the hearing on May 26, 2011, Devine was 59 years old, 5'10" tall, and weighed 180 pounds.  He went to college for one or two years, and had served in the U.S. Army Reserve.  He has a driver's license and is able to drive.  Devine testified that he works as a real estate agent and broker about six to eight hours per week.  He works on his own and no longer has agents working for him.

He has one residential listing.  Devine became a real estate agent and broker in 1986.  He also worked as a boat captain and newspaper wholesaler and rehabilitated real properties for resale.  Devine owns five residential rental properties.  He actively manage the properties but contracts out the maintenance. Devine said back and neck problems prevented him from working full-time.  He testified that he has pain in his lower back and legs.  If he looks at the computer for more than 30-40 minutes, he gets a burning sensation in his neck and upper back.  Devine said his lower back hurts every day for at least a couple of hours, and only Ibuprofen provides pain relief.  He rates his lower back pain as a two or three on a ten-point scale.  Devine said his upper back and neck pain also rates as a two or three on a ten-point scale and that nothing provides relief.  Devine takes Valium and Prednisone.  He can walk about a mile and can sit with his back arched for about an hour.  Lifting a gallon of milk is painful, but he can bend over and climb a flight of stairs.  On a typical day, Devine wakes up, gets out of bed, talks to his wife, watches television, talks on the phone, and tries to "take it easy." His wife performs most household chores, and he lives in a condominium so he has no yard work.  Devine can walk and pick up his small dog.  Devine has trouble sleeping and constantly wakes up during the night because of pain.  Devine stated that his back and neck problems have limited how much he can work as a real

estate agent, and that if he were to try to work full-time that his pain would greatly

increase and cause spasms.

A vocational expert also testified at the hearing. The ALJ posed the

following hypothetical to the VE:

> ALJ: Please assume a person of the claimant's age, education and
> past work experience. Please assume a person capable of performing
> at the light exertional level. However, if that person is required to sit,
> they are – that person is limited to sitting for one hour at a time and
> then needs the ability to stand for five minutes or so while remaining
> on task. Would such a person be able to perform any of the
> claimant's past work?

In response, the VE indicated that a real estate agent would fit within the

parameters of that hypothetical. Next, the ALJ assumed the limitations from the

first hypothetical and added the following limitations: occasionally climb ladders,

ropes and scaffolds; occasionally kneel, occasionally crouch and occasionally

crawl; and should avoid concentrated exposure to extreme heat, extreme wetness,

and hazards such as machinery and heights. The VE responded that the

hypothetical claimant should still be able to work as a real estate agent. Then, the

ALJ assumed that the person would only be able to sit or stand for six hours out of

an eight-hour workday. The VE expert responded that such a person would not be

able to work as a real estate agent or perform any other work in the regional or

national economies.

**Legal Standard**

A court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion. Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, a court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, id., or because the court would have decided the case differently. Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992). In determining whether existing evidence is substantial, a court considers "evidence that detracts from the Commissioner's decision as well as evidence that supports it." Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000) (quoting Warburton v. Apfel, 188 F.3d 1047, 1050 (8th Cir. 1999)). Where the Commissioner's findings represent one of two inconsistent conclusions that may reasonably be drawn from the evidence, however, those findings are supported by substantial evidence. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001) (internal citation omitted).

To determine whether the decision is supported by substantial evidence, the

Court is required to review the administrative record as a whole and to consider:

(1) the credibility findings made by the Administrative Law Judge;

(2) the education, background, work history, and age of the claimant;

(3) the medical evidence from treating and consulting physicians;

(4) the plaintiff's subjective complaints relating to exertional and non-exertional impairments;

(5) any corroboration by third parties of the plaintiff's impairments; and

(6) the testimony of vocational experts, when required, which is based upon a proper hypothetical question.

Brand v. Secretary of Dep't of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

Disability is defined in social security regulations as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. § 42 U.S.C. 416(i)(1); § 42 U.S.C. 1382c(a)(3)(A); § 20 C.F.R. 404.1505(a); 20 C.F.R. 416.905(a). In determining whether a claimant is disabled, the Commissioner must evaluate the claim using a five step procedure.

First, the Commissioner must decide if the claimant is engaging in

substantial gainful activity.  If the claimant is engaging in substantial gainful activity, he is not disabled.

Next, the Commissioner determines if the claimant has a severe impairment which significantly limits the claimant's physical or mental ability to do basic work activities.  If the claimant's impairment is not severe, he is not disabled.

If the claimant has a severe impairment, the Commissioner evaluates whether the impairment meets or exceeds a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the impairment satisfies a listing in Appendix 1, the Commissioner will find the claimant disabled.

If the Commissioner cannot make a decision based on the claimant's current work activity or on medical facts alone, and the claimant has a severe impairment, the Commissioner reviews whether the claimant can perform his past relevant work.  If the claimant can perform his past relevant work, he is not disabled.

If the claimant cannot perform his past relevant work, the Commissioner must evaluate whether the claimant can perform other work in the national economy.  If not, the Commissioner declares the claimant disabled.  § 20 C.F.R. 404.1520; § 20 C.F.R. 416.920.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is

uncorroborated by objective medical evidence.  Basinger v. Heckler, 725 F.2d

1166, 1169 (8th Cir. 1984).  The ALJ may, however, disbelieve a claimant's

subjective complaints when they are inconsistent with the record as a whole.  See

e.g., Battles v. Sullivan, 902 F.2d 657, 660 (8th Cir. 1990).  In considering the

subjective complaints, the ALJ is required to consider the factors set out by

Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984), which include:

> claimant's prior work record, and observations by third parties
> and treating and examining physicians relating to such matters
> as: (1) the claimant's daily activities; (2) the duration,
> frequency, and intensity of the pain; (3) precipitating and
> aggravating factors; (4) dosage, effectiveness and side effects
> of medication; and (5) functional restrictions.

Id. at 1322.  When an ALJ explicitly finds that the claimant's testimony is not

credible and gives good reasons for the findings, the court will usually defer to the

ALJ's finding.  Casey v. Astrue 503 F.3d 687, 696 (8th Cir. 2007).  However, the

ALJ retains the responsibility of developing a full and fair record in the non-

adversarial administrative proceeding.  Hildebrand v. Barnhart, 302 F.3d 836, 838

(8th Cir. 2002).

### The ALJ's Findings

The ALJ issued her decision that Devine was not disabled on June 6, 2011.

She found that Devine had the severe impairments of disc space narrowing, facet

degenerative changes, mild neuroforaminal narrowing, mild central canal stenosis, and cervical degenerative disc changes. The ALJ found that Devine retained the residual functional capacity to perform light work, with the exception that he could only sit for one hour at a time, after which he would require a five-minute stand option, that he could only occasionally climb ladders, ropes, and scaffolds, kneel, crouch, or crawl, and that he should avoid concentrated exposure to extreme heat, wetness, and hazards such as heights or dangerous machinery. In fashioning Devine's RFC, the ALJ determined that his impairments could be expected to produce some of his alleged symptoms; however, she concluded that Devine's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible to the extent they were inconsistent with her RFC. The ALJ relied on the vocational expert's testimony to determine that Devine was able to perform his past relevant work as a real estate agent and concluded that Devine was not disabled.

## Discussion

Devine contends that the ALJ did not properly evaluate his credibility under the standards set out in Polaski. When determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's prior work record and third party

observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. Halverson v. Astrue, 600 F.3d 922, 931 (8th Cir. 2010); Polaski, 739 F.2d at 1322. While an ALJ need not explicitly discuss each Polaski factor in her decision, she nevertheless must acknowledge and consider these factors before discounting a claimant's subjective complaints. Wildman v. Astrue, 596 F.3d 959, 968 (8th Cir. 2010).

"[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the Polaski standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." Masterson v. Barnhart, 363 F.3d 731, 738–39 (8th Cir. 2004). It is not enough that the record merely contain inconsistencies. Instead, the ALJ must specifically demonstrate in her decision that she considered all of the evidence. Id. at 738; see also Cline v. Sullivan, 939 F.2d 560, 565 (8th Cir. 1991). Where an ALJ explicitly considers the Polaski factors but then discredits a claimant's complaints for good reason, the decision should be upheld. Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001). The determination of a claimant's credibility is for the Commissioner, not the

Court, to make.  Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005).  Devine

argues that the ALJ erred in discounting his complaints of pain because no

physician ever stated he was disabled.  Devine also argues that the physical

residual functional capacity questionnaire completed by Dr. Hurford after the

hearing actually meets that requirement and is uncontradicted in the record.

Here, the ALJ properly evaluated Devine's credibility based upon his own

testimony, the objective medical evidence of record, Devine's daily activities, the

conservative nature of his treatment, and the lack of restrictions set out by treating

and examining physicians.  Contrary to Devine's argument, the lack of significant

limitations set out by treating and examining physicians is relevant to a

determination of disability.  See Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir.

2005) (ALJ appropriately discredited claimant's allegations of disabling pain by

relying, in part, on claimant's lack of treatment).  In discounting Devine's

complaints of pain, the ALJ noted that Devine did not seek or require aggressive

treatment for his impairments.  During the time between his onset date and his date

last insured, Devine had very little treatment for his back and neck issues.  He did

not engage in physical therapy (although it was recommended), did not obtain any

epidural or steroid injections (although he had a nerve root steroid injection in

2006), and required no assistive devices or surgery.  Dr. Young, Devine's treating

physician during that time period, prescribed only a home exercise program and anti-inflammatories. Dr. Young's examination during that time period showed normal muscle strength in all extremities with normal muscle bulk and no atrophy or joint instability, a full painless range or motion of the thoracic and lumbar spine, a full, painless range of motion of his neck, with no tenderness in the neck or lumbar region. Although Dr. Young observed an antalgic gait favoring the right, Devine's station and posture were normal, and straight leg raising testing was negative. The December 17, 2009, MRIs of Devine's lumbar and cervical spines showed "mild" abnormalities only, including central spinal stenosis at L3-4 and L4-5 and multilevel degenerative disc disease.

The medical evidence from Devine's treating physician was consistent with the consultative examination performed by Dr. Cason on June 28, 2010. Dr. Cason found that Devine had a normal range of motion without muscle spasms in his back and negative straight leg raising test. Although Dr. Cason observed decreased motion and tenderness in Devine's cervical spine and left hip, there were no spasms. Devine's extremities and all major muscle groups were normal, as was his grip strength. Devine walked with a left limp, but he could heel and toe stand and squat. While an ALJ may not discount allegations of disabling pain solely on the lack of objective medical evidence, it is a factor the ALJ may

properly consider when determining a claimant's credibility.  See Forte v. Barnhart, 377 F.3d 892, 895 (8th Cir. 2004).

The ALJ also considered the medical evidence submitted by Dr. Hurford -- even though she began treatment of Devine almost one year after his date last insured -- and found it consistent with the other objective medical evidence of record.  Devine was still working as a real estate agent when he was first seen by Dr. Hurford on October 26, 2010.  He told Dr. Hurford that he could drive, walk, climb stairs, do some housework, sit, do some work at his job, do some standing, and get dressed.  He denied any sleep disturbance.  Devine had normal tone and strength in his lower extremities, with some pain and moderate restriction with internal rotation on his left side and no restrictions on the right.  His straight leg raising test, reflexes, and gait were normal.  After diagnosing him with cervical lumbar degenerative disc disease and spondylosis, Dr. Hurford recommended a short course of oral steroids, a muscle relaxer for use at bedtime, and physical therapy (which Devine did not do).  When Dr. Hurford suggested facet injections and a nerve root block as treatment options in November of 2010, Devine rejected those recommendations and chose instead a less aggressive form of treatment in the form of steroids and physical therapy.  By December of 2010, Devine reported doing much better and rated his pain a two on a ten-point scale.  In April of 2011,

Dr. Hurford noted that "regular dosing of any medication is not done," although Devine used Ibuprofen and a muscle relaxer as needed. Devine reported back spasms that were relieved with Medrol. His thoracolumbar spine, buttocks, and hips were normal, as were his gait, stance, reflexes, balance, muscle bulk, muscle tone, and muscle strength. Straight leg raising test was negative. Devine had some tenderness and pain from flexion of the lumbosacral spine. Dr. Hurford prescribed Valium and Restoril, stretching, exercises, and heat and cold application for pain relief.

In June of 2011, one and one-half years _after_ his date last insured, Devine rated his back pain as a three to sometimes a nine on a ten-point scale, along with neck symptoms. Even then, Dr. Hurford found a full range of motion in his cervical spine, normal strength in his upper extremities, no pain in rotation of the hips, and normal sensation and gait.

Devine argues that the ALJ's credibility analysis was improper because it conflicts with Dr. Hurford's physical residual functional capacity questionnaire.[6] According to Devine, Dr. Hurford's opinion undermines the ALJ's credibility determination that Devine's complaints of pain were not fully supported by the

---

[6] As stated above, I must consider this evidence -- even though it was not available to the ALJ when she issued her decision -- because it was submitted to the Appeals Council.

objective medical evidence of record. I disagree. Even if Hurford's questionnaire is considered, the record as a whole does not demonstrate that the ALJ substantially erred in her credibility assessment. First, this evidence is not probative of Devine's condition for the relevant time period -- December 1, 2009 to December 31, 2009. The questionnaire was completed July 8, 2011 -- eighteen months after Devine's last insured date -- and is based on treatment which began nearly one year after the relevant time period. See Rehder v. Apfel, 205 F.3d 1056, 1061 (8th Cir. 2000). Second, this evidence does not support a finding of disability. Dr. Hurford provides no responses to most of the questions regarding Devine's limitations other than "See Notes." Yet the ALJ considered Dr. Hurford's treatment notes and found them to be consistent with her determination that Devine's impairments were not disabling, in part because he did not seek or require aggressive treatment. See Shannon v. Chater, 54 F.3d 484, 487 (8th Cir. 1995) (ALJ may properly take into account lack of significant medical treatment or regular prescription medication use to discredit complaints of disabling pain). The opinion of the treating physician should be given great weight only if it is based on sufficient medical data. Leckenby v. Astrue, 487 F.3d 626, 632 (8th Cir. 2007) (holding that a treating physician's opinion does not automatically control or obviate need to evaluate record as whole and upholding the ALJ's decision to

discount the treating physician's medical-source statement where limitations were never mentioned in numerous treatment records or supported by any explanation); Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment); Chamberlain v. Shalala, 47 F.3d 1489, 1494 (8th Cir. 1995) (holding that opinions of treating doctors are not conclusive in determining disability status and must be supported by medically acceptable clinical or diagnostic data) (internal quotation marks and citation omitted). Here, Hurford's conclusory opinion is not entitled to great weight as it is inconsistent with her treatment notes and the other, uncontraverted objective medical evidence of record.[7] See Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000) (an ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough

---

[7]Because Dr. Hurford did not complete most of the questionnaire, it is difficult to determine whether she even thought Devine was disabled. With respect to the few questions she did answer, it appears that at least some of her opinions were consistent with the ALJ's RFC. For example, Dr. Hurford indicated that Devine could sit or stand for one to two hours at a time before needing to walk. The ALJ included a one-hour sit with a five-minute stand option in Devine's RFC. To the extent Dr. Hurford indicated that Devine's use of medication was limited due to comorbid conditions, her records make clear that this condition did not exist until June 28, 2011, well after Devine's last insured date of December 31, 2009. Evidence demonstrating a later deterioration of a claimant's condition is not material to a claimant's condition as it existed on the date last insured and does not support an award of benefits. See Thomas v. Sullivan, 928 F.2d 255, 260-61 (8th Cir. 1991).

medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.") (internal quotation marks and citations omitted); Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that an ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record).

The ALJ's credibility assessment is also properly supported by evidence of Devine's daily activities. In discounting Devine's complaints of pain, the ALJ considered Devine's testimony and statements to his physician that he continued to work as a real estate agent about six to eight hours per week. He rated his low back pain as a two or three on a ten-point scale and stated his upper back pain was variable. He can use a computer for 30-40 minutes at a time, walk about a mile, and sit with his back arched for about an hour. Devine testified that he could lift a gallon of milk with pain, bend over, climb stairs, and pick up his small dog. In his application for benefits, Devine stated that he could walk, drive, and ride in a car. He shops for groceries, goes out alone, spends time with others, and attends church. He uses Ibuprofen for pain relief. Devine's daily activities are inconsistent with his allegation of disabling pain, and the ALJ did not clearly err in her consideration of these activities when evaluating Devine's credibility. See Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001) ("Allegations of pain may be

discredited by evidence of daily activities inconsistent with such allegations.")
(internal citation omitted); Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004)
("It was also not unreasonable for the ALJ to note that [claimant's] daily activities,
including part-time work . . . [and] attending church . . . were inconsistent with
[claimant's] claim of disabling pain."). "Subjective complaints may be discounted
if the evidence as a whole is inconsistent with the claimant's testimony." Cox v.
Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (citing Polaski, 739 F.2d at 1322).
Because substantial evidence in the record as a whole supports the ALJ's
credibility determination, I will affirm the decision of the Commissioner.

Devine also argues that the ALJ's RFC was conclusory and not based upon
substantial evidence. RFC is defined as "what [the claimant] can still do" despite
his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When
determining whether a claimant can engage in substantial employment, an ALJ
must consider the combination of the claimant's mental and physical
impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). The Eighth
Circuit has noted the ALJ must determine a claimant's RFC based on all of the
relevant evidence, including the medical records, observations of treating
physicians and others, and an individual's own description of his limitations.
McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (citing Anderson v.

<u>Shalala</u>, 51 F.3d 777, 779 (8th Cir. 1995)).  The record must include some medical

evidence that supports the RFC.  <u>Dykes v. Apfel</u>, 223 F.3d 865, 867 (8th Cir.

2000).  Devine contends that the ALJ erred when formulating his RFC because she

failed to explain how she reached the conclusion that he could perform light work.

Devine also argues that the ALJ improperly relied upon the physical residual

functional capacity assessment performed by Carla Battle because she was not a

physician, and the examination was conducted nearly a year before the hearing.

According to Devine, the only medical evidence upon which the RFC could

properly be based was the physical residual functional capacity questionnaire

completed by Dr. Hurford after the hearing.

Here, the ALJ properly formulated Devine's RFC only after evaluating his

credibility and discussing the relevant evidence, including Devine's testimony, the

medical evidence,  Devine's daily activities, and the testimony of a vocational

expert.  Contrary to Devine's argument, it was not error for the ALJ to consider

the agency RFC assessment form prepared by Carla Battle as part of the record as

a whole.  <u>See</u> <u>Frankl v. Shalala</u>, 47 F.3d 935, 938 (8th Cir. 1995).[8]  In this case, it

_____

[8]Although it is true that Ms. Battle's RFC assessment was formulated nearly a year before
the May 26, 2011 hearing date, that fact does not render the evidence irrelevant to a
determination of Devine's disability claim.  Here, it is the proximity to Devine's last insured date
of December 31, 2009, and <u>not</u> the proximity to the hearing date (which occurred nearly 18
months after his last insured date), which determines the relevancy of the evidence.  Because Ms.
Battle's RFC assessment was completed on July 7, 2010 and related to Devine's condition before

is clear that the ALJ did not rely exclusively on Ms. Battle's RFC assessment when formulating Devine's RFC. Instead, she considered Devine's own testimony that he continued to work part-time as a real estate agent and about his other daily activities, the medical evidence provided by Drs. Young, Cason, and Hurford setting out Devine's functional limitations and restrictions, as well as the testimony of the vocational expert regarding the demands of Devine's past relevant work. The ALJ agreed with Dr. Hurford that Devine required a five-minute stand option after one hour of sitting, and she also limited Devine to occasional climbing, kneeling, crouching, or crawling. The ALJ further determined that Devine should avoid exposure to heat, wetness, and hazards. She did not simply adopt a light work RFC wholesale. Here, there is substantial evidence in the record as a whole to support the ALJ's determination that Devine was capable of performing light work, with some restrictions.[9]

Despite these restrictions placed upon his work abilities, the vocational expert testified that Devine was still capable of performing his past relevant work

---

his insured status expired, the ALJ may properly consider it as part of the record as a whole when formulating Devine's RFC.

[9]I have already determined that Dr. Hurford's RFC assessment is not entitled to great weight in a determination of Devine's disability claim. For these same reasons it was proper for the ALJ to consider other, well-supported objective medical evidence of record, and the ALJ did not err by failing to rely exclusively on Dr. Hurford's opinion in her formulation of Devine's RFC.

as a real estate agent. "Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled." Lowe v. Apfel, 226 F.3d 969, 973 (8th Cir. 2000) (internal citation omitted). Here, the ALJ properly relied upon the testimony of the vocational expert, Devine's own testimony, and the other evidence of record in determining that Devine retained the ability to work as a real estate agent, and this finding is substantially supported by the record as a whole. See, Smallwood v. Chater, 65 F.3d 87, 89 (8th Cir. 1995) (vocational expert can properly offer testimony as to whether claimant can work after taking into account medical limitations); Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir. 2004) (ALJ may properly rely on claimant's own description of past duties when formulating RFC and determining exertional demands of past relevant work). To the extent Devine claims that the RFC is conclusory merely because it did not follow a specific format set out in Social Security Regulation 96-8p, this argument is meritless because "an arguable deficiency in opinion-writing technique does not require [the Court] to set aside an administrative finding when that deficiency had no bearing on the outcome." Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008). Because Devine retained the RFC to perform his past relevant work as a real estate agent, he was not disabled.

Substantial evidence in the record as a whole supports the ALJ's RFC

determination, so I will affirm the decision of the Commissioner.

## Conclusion

Because substantial evidence in the record as a whole supports the ALJ's

decision to deny benefits, I will affirm the decision of the Commissioner.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is

affirmed.

A separate Judgment in accord with this Memorandum and Order is entered

this date.

CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 15th day of August, 2013.